## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

DAMONT EWELLS                                                                    PLAINTIFF
ADC #109853

V.                                    No. 5:19-CV-316-DPM-JTR

SONDRA PARKER,
Health Services Administrator,
Nurse Supervisor, Varner Supermax;
ESTELLA BLAND, Health Services Provider,
Nurse Practitioner, Varner Unit, ADC;
DENISE POWELL, Nurse, ADC;
KAYLA HARGRAVE, Nurse, ADC;
and LISA WITHERSPOON, Nurse                                          DEFENDANTS

## <u>RECOMMENDED DISPOSITION</u>

The following Recommended Disposition has been sent to Chief United

States District Judge D. P. Marshall Jr. You may file written objections to all or part

of this Recommendation. If you do so, those objections must: (1) specifically explain

the factual and/or legal basis for your objection; and (2) be received by the Clerk of

this Court within fourteen (14) days of the date of this Recommendation. If you do

not file objections, Judge Marshall may adopt this Recommendation without

independently reviewing all of the evidence in the record. By not objecting, you may

waive the right to appeal questions of fact.

## I.  Introduction

In his *pro se* § 1983 Complaint (*Doc. 2*) and Amended Complaint (*Doc. 40*), Plaintiff Damont Ewells ("Ewells"), a prisoner incarcerated in the Varner Maximum Security Unit ("Varner") of the Arkansas Department of Corrections ("ADC"), alleges that Defendants Rory Griffin ("Griffin"), Sondra Parker ("Parker"), Estella Bland ("Bland"), Denise Powell ("Powell"), Kayla Hargrave ("Hargrave"), and Lisa Witherspoon ("Witherspoon") violated his constitutional rights.

After screening Ewells' Complaints, the Court allowed him to proceed with claims that: (1) Bland, an advanced practice registered nurse ("APRN") and medical provider at Varner, and Hargrave, a nurse at Varner, provided him inadequate medical care after he was assaulted by other inmates on September 19, 2017; (2) APRN Bland provided him inadequate medical care from February 2019 to May 10, 2019; (3) Parker, Powell, and Griffin[1] failed to take action to correct Bland and Hargrave's constitutionally-deficient medical treatment; and (4) Witherspoon played a role in the inadequate medical care because she scheduled Ewells to be seen by APRN Bland. *Doc. 5; Doc. 40; see also Doc. 2 at 76* (last date of alleged inadequate care in Complaint was May 10, 2019).

---

[1] Defendant Griffin has since been dismissed as a party to this action based on Ewells' failure to exhaust administrative remedies against him. *Doc. 89*.

On July 1, 2021, Defendants filed a Motion for Summary Judgment (*Doc. 76*), a Statement of Undisputed Facts (*Doc. 77*), and a Brief in Support (*Doc. 78*) arguing that the claims against them should be dismissed because Ewells failed to demonstrate that Bland and Hargraves acted with deliberate indifference to his serious medical needs. Defendants further argue that: (1) Parker cannot be held liable under a theory of *respondent superior*; (2) Parker and Powell cannot not be held liable for merely failing to respond to Ewells' grievances against Bland and Hargraves; and (3) Ewells failed to state an actionable § 1983 claim against Witherspoon.

On July 28, 2021, Ewells filed an untimely Response to the Defendants' Motion for Summary Judgment (*Doc. 80*); a Response to Defendants' Statement of Facts (*Doc. 82*), and his own Statement of Facts (*Doc. 81*). The Defendants filed a Response to Ewell's Statement of Facts (*Doc. 87*) and a Reply (*Doc. 86*), and Ewells filed three additional "Rebuttal" documents (*Doc. 89; Doc. 90; Doc. 94*).[2] Thus, the issues are fully briefed and joined for disposition.

---

[2] Although Ewells did not seek leave to file these additional "Rebuttals," the Court will treat the papers as Sur-Replies and consider them in making a recommendation on Defendants' Motion. *See* Local Rule 7.2(b) (anticipating only a fourteen-day response period for summary judgment motions, followed by a seven-day reply period).

## II.  Undisputed Facts

Before addressing the merits of Defendants' Motion for Summary Judgment, the Court will set forth the relevant facts, in the light most favorable to Ewells:[3]

1.  On September 19, 2017, Ewells was in an altercation with a group of inmates while incarcerated at the Cummins Unit of the ADC. As a result of the altercation, Ewells received injuries to his head, nose, right elbow, right thumb, and left shin. *Doc. 82 at 3–4*; *Doc. 2 at 6*.

2.  Ewells did not receive medical treatment for his injuries at the Cummins Unit. Instead, on the same day as the altercation, Ewells was transferred to the Varner Unit. *Doc. 2 at 6;* Ewells Dep. 34:4–24 (*Doc. 77-2 at 34*).

3.  Upon intake at Varner, a nurse, who is not a defendant in this § 1983 action, conducted a transfer assessment of Ewells. According to the encounter notes, Ewells complained of numbness and swelling to his right hand and a "boil on [his] butt." The nurse also noted that Ewells had a "small bruise on left side of nose [and]

---

[3] "In deciding a motion for summary judgment, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion…so long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them." *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotation marks, brackets, and ellipsis omitted).

scrapes on [his] lower left leg." According to the "Education" portion of the medical record, Ewells was told to "follow up with medical as needed."[4] *Doc. 77-1 at 1*.

4.    Ewells made no complaints to the nurses making rounds in the segregation unit on the evening of September 19, 20, and 21. *Doc. 77-1 at 1–2*. Ewells explained that he made no complaints during these three days because he was staying in bed "awaiting sick call or provider call" and, even if he had complained, he believes the nurse would have only told him "to put in a sick call request."[5] *Doc. 82 at 5*.

5.    On September 22, three days after sustaining injuries, Ewells was seen by Defendant Nurse Kayla Hargrave at sick call. Ewells complained that he had a cyst on his left buttocks and "major injures" from being "jumped." Specifically, he complained that his right elbow was swollen, he had "several head injuries," and he thought his right thumb and left shin might be fractured and his nose broken. *Doc. 77-1 at 3*.

6.    Nurse Hargrave noted a scabbed-over abrasion on Ewells' left elbow, right elbow swelling, right thumb swelling with discoloration to the palm, small

---

[4] Ewells' medical records are in "SOAPE" format, which stands for Subjective, Objective, Assessment, Plan, and Education. *See* Deposition of Luis Berrios, M.D., *Casiano v. Ashcroft*, No. 3:04-CV-67-RV-MB, 2004 WL 3568844 (N.D. Fla. Mar. 22, 2005), *ECF No. 32-11 at 2*.

[5] It is unclear from the record if, or when, Ewells actually placed a sick call request during this time period.

nodules on his left forehead and back of scalp, a large abrasion on the left shin with minimal swelling, and no signs of infection on the cyst. *Id.*

7.    Nurse Hargraves scheduled Ewells right arm and hand x-rays for September 27, refilled his prescription for naproxen, gave him triple antibiotic ointment for his left shin, and emailed the provider to see if any further treatment was needed. *Id.*

8.    Ewells believes that, during the September 22 visit, Nurse Hargraves should have covered up his left shin abrasion to prevent it from getting infected and given him antibiotic ointment and "something for the pain." Ewell Dep. 49:9–20 (*Doc. 77-2 at 49*); *Doc. 82 at 5, ¶ 16.*

9.    On the evening of September 25, Ewells complained to a segregation rounds nurse, who is not a defendant in this § 1983 action, that he thought his left shin was infected and that it was "leaking all over [his] bed." The nurse noted that the large abrasion to Ewells' left shin had excessive drainage and was infected. She referred him to a provider. *Doc. 77-1 at 4.*

10.    The next morning, Ewells was seen at sick call by Nurse Hargraves. She noted that the swelling in Ewells' left leg had decreased since the last time she had seen him on September 22 and, even though there was no longer a scab over the abrasion on his left shin, there was no drainage. Nurse Hargraves gave him more triple antibiotic ointment and large bandages. She also reminded him that he was

already scheduled for x-rays and to see a medical provider. She declined to give him anything other than naproxen for his pain. *Doc. 77-1 at 5*.

11.    Ewells believes that Nurse Hargraves should have wrapped his leg, provided him stronger pain medication, and ordered a dressing change during the September 26 encounter. *Id.; Doc. 82 at 6, ¶ 18*.

12.    On September 27, x-rays taken of Ewells' right elbow and right hand were processed (*Doc. 77-1 at 22, 24*)[6] and Ewells' inhaler prescription was refilled (*Doc. 77-1 at 6*).

13.    On October 2, 2017, Ewells was seen at provider call by Defendant APRN Estella Bland. During that visit, Ewells complained that no one was addressing the sore on his left shin, and that he had pain in his nose, right elbow, and right hand. Defendant Bland reviewed the right arm and hand x-rays, which showed "normal" results, and concluded there was no indication for follow-up on those injuries. She scheduled an October 4 nose x-ray for Ewells. *Doc. 77-1 at 7*.

14.    On October 4, Ewells' nose x-rays were processed and showed a "normal nasal bone" with "no…fracture."   *Doc. 77-1 at 26*.[7]

---

[6] The record is unclear whether the x-rays were taken on September 27, or just processed that day. It appears that the x-rays may have been taken after Ewells' first visit with Nurse Hargraves on September 22.

[7] Ewells denies an x-ray of his nose was ever taken. *Doc. 82 at 6–7, ¶¶ 20–21*. However, the x-ray order in the record "blatantly contradicts" Ewells' version of events. *O'Neil*, 496 F.3d at

15.     On October 8, Ewells complained to the segregation rounds nurse, who is not a defendant in this § 1983 action, that he had two new boils: one on his "[left] butt cheek and the other on [his] penis." The nurse noted that the boil on Ewells' penis had ruptured, and the abrasion on his left leg required dressings. She provided him supplies and added a treatment order. *Doc. 77-1 at 9*.

16.     The next morning, October 9, Ewells was seen by Defendant Hargraves for complaints of blood in his stool, "two boils that came up over the weekend,"[8] and his left shin injury. Hargraves noted that the boil on the left buttocks was not visible, but the boil at the base of Ewells' penis had ruptured and had "minimal…drainage." She also noted that Ewells' left shin abrasion was no longer scabbed over, but that there was no sign of infection. Ewells was given an oral antibiotic prescription (Bactrim DS) to be taken twice a day for ten days. He was referred to a provider for the blood in his stool. *Doc. 77-1 at 10*.

---

917. Further, Ewells readily admitted in his deposition that he has a "real problem with [his] memory." *Doc. 77-2 at 54, 69–70*.

[8] The parties dispute whether the boils were related to the September 19 altercation (*Doc.82 at 7, ¶ 22*), but it is not a "material fact" that the Court need resolve before addressing the merits of Defendants' Motion for Summary Judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.")

17.    On the evening of October 9, the nursing making rounds in the segregation unit provided Ewells additional gauze, tape, gauze wrap, and a large bandage. *Id.*

18.    The morning of October 12, Ewells complained that his "boils were draining a yellow substance," and he, once again, was provided supplies by a nurse. *Doc. 77-1 at 11.*

19.    On October 13, Ewells was seen by medical provider Ronald Stukey, who is not a defendant in this § 1983 action. Ewells complained of blood in his stool, boils, and a left shin abrasion. Ewells stated that the boils were improving but the blood in his stool was getting worse. Stukey noted that Ewells' left shin and boils were healing. He ordered several lab tests and prescribed Ewells a different kind of antibiotic (Clindamycin). *Doc. 77-1 at 13.*

20.    On October 23, Ewells was again seen by Defendant Hargrave for complaints about his left shin and right elbow pain. Hargrave noted that Ewells had full range of motion to his right arm and reviewed with Ewells the right elbow x-ray, which showed no new fracture. She also cleansed Ewells' left shin abrasion and applied a large bandage. She advised Ewells to continue taking his antibiotic as prescribed and to keep his left shin abrasion "open to air to allow healing and to dry out." *Doc. 77-1 at 17.*

21.    On October 29, Ewells was seen at provider call by Stukey, who noted that Ewells' right arm, right hand, and nasal bone x-rays were all within normal limits. He changed Ewells' pain medication from nortriptyline to Keppra. *Doc. 77-1 at 19.*

22.    After the October 29, 2017 visit with provider Stukey, there is nothing in the record suggesting that Ewells again complained of, or was seen for, his September 19, 2017 injuries. Ewells admits that his complaints "move forward in time to 2019." *Doc. 82 at 7, ¶ 24.*

23.    In early 2019, Ewells began to seek treatment for non-acute health care conditions. In January, he sought an evaluation of: his upper back; right and left elbow pain; headaches; and a lump over his left eye. By early March, he additionally was seeking: prescription renewals for his blood pressure medication, "double cuffs," and "double pillow;" and treatment for his acid reflux. *Doc. 77-1 at 30, 54–55.*

24.    On January 7, 2019, a "Release From Responsibility for Medical Examination/Treatment Form" ("Treatment Refusal Form") was signed by Defendant Bland and two witnesses,[9] based on Ewells' alleged refusal to see Bland

---

[9] The signatures of the witnesses are illegible.

for an evaluation of his upper back and right elbow pain. Despite the form having a spot for the inmate's signature, Ewells did not sign the document.[10] *Doc. 77-1 at 54*.

25.    On January 31, a Treatment Refusal Form was signed by Defendant Bland and one witness, based on Ewells' alleged refusal to see Defendant Bland for an evaluation of his headaches, upper back, left elbow pain, and lump over his left eye. Ewells did not sign the form. *Doc. 77-1 at 55*.

26.    On March 8, Ewells was seen at sick call by a nurse, who is not a defendant in this § 1983 action, for complaints of "lower back pain; left elbow pain; lump over left eye; breathing problems; med renewal (BP meds); [and] script renewal (double cuff; double pillow)." The nurse noted that Ewells had twice refused to participate in provider call for these issues. She referred Ewells again to the provider and encouraged him to attend his next appointment. *Doc. 77-1 at 30; Doc. 82 at 7–8, ¶ 25*.

27.    On March 14, Ewells was seen by a nurse, who is not a defendant in this § 1983 claim, for acid reflux and swelling to his feet and ankles. The nurse referred Ewells to a provider. *Doc. 77-1 at 32; Doc. 82 at 8, ¶ 26*.

---

[10] Ewells vehemently denies that he refused medical treatment during this time period and disputes whether he was ever presented with a Treatment Refusal Form to sign. *Doc. 82 at 8–10, ¶¶ 27–28, 31–32*. However, Ewells' contentions do not change the fact that four Treatment Refusal Forms were executed by Defendant Bland and various prison staff from January to March 2019 based on Ewells' alleged refusal of medical treatment. *Doc. 77-1 at 54–57*.

28.    On March 15, Ewells was scheduled for provider call with Defendant Bland but was not provided treatment. Bland's recorded reason for not providing treatment was that Ewells refused to be seen by her. *Doc. 77-1 at 32*.

29.    That same day, a Treatment Refusal Form was signed by Defendant Bland and one witness based on Ewells' alleged refusal to see Bland for an evaluation of his "back pain, lump over [left eye], headache, [left] elbow, breathing problems, [blood pressure] medicine, and script renewal [for] double handcuff and pillow." Ewells did not sign the form. *Doc. 77-1 at 56*.

30.    On March 25, Ewells was seen by a non-party nurse who refilled his naproxen prescription for five days and referred him to provider call.

31.    At about 4:00pm on March 26, Ewells collapsed in his cell. According to Ewells, his back "went out" when he tried to get up too quickly from his bed to grab his dinner tray from the guard. *Doc. 82 at 9, ¶ 30*; Ewells Dep. 84:16–85:6 (*Doc. 77-2 at 84–85*).   He was not seen by a nurse until 11:36 that evening. After the non-party nurse took Ewells' vitals and completed a urinalysis, she put in the "Education" section of her notes that Ewells should use the prison's "sick call form as needed," take all medication prescribed to him, "refrain from drug use [and] drink plenty of fluids." *Doc. 77-1 at 35*.

32.    On March 29, Ewells was again scheduled to be seen by Defendant Bland at provider call for "back pain, acid reflux, and med. renewal." She again put

in her notes that Ewells refused treatment (*Doc. 77-1 at 36*) and a Treatment Refusal Form was signed by Bland and two witnesses. Ewells did not sign the form. *Doc. 77-1 at 57*.

33.    On March 31, Ewells was seen at sick call by a non-party nurse for chest and back pain. An EKG was performed which showed a "NSR with left standard deviation." According to the health encounter notes, Defendant Bland was informed of the results of the EKG and Bland gave a verbal order that Ewells be placed on the "chronic care" list for the next day, April 1. *Doc. 77-1 at 37*.

34.    For reasons that are not readily apparent from the record, Ewells was *not* seen for his chronic care conditions as scheduled on April 1. *See Doc. 77-1 at 37–38; Doc. 82 at 10, ¶ 33*.

35.    On April 4, Ewells was seen by a non-party nurse for complaints of pain in his neck, upper back, left elbow, and chest. He also complained of migraines and muscle spasms in his back and legs and stated that he had not had his blood pressure, pain, or acid reflux medication. *Doc. 77-1 at 38; Doc. 82 at 10–11, ¶ 35*.

36.    On April 5, Ewells was seen, and *actually treated*, by Defendant Bland. *Doc. 77-1 at 40*.

37.    During this appointment, APRN Bland noted that Ewells presented stooped but had a normal range of motion of the neck, was "able to position himself of the exam chair," and was "smiling and grinning with Security." She reviewed x-

rays of Ewells' lumbar spine from February 2018 and gave him three months' worth of prescriptions for an asthma inhaler, acetaminophen, naproxen, lisinopril (blood pressure medication), and omeprazole (acid reflux medication). She scheduled him for another chronic care visit in three months and gave him a handout of "exercises for strengthening and increasing flexibility of the back." *Doc. 77-1 at 40–41; Doc. 82 at 11, ¶ 36.*

38.    On April 15, Defendant Bland examined Ewells for his complaints of lower back pain, and the lump over his left eye. Bland noted that the lump over the left eye was "likely not interfering with [Ewells'] vision." She declined to prescribe Ewells' requested prescription of Zanaflex and told him to continue his treatment plan of acetaminophen, naproxen, and back exercises. *Doc. 77-1 at 43; Doc. 82 at 11–12, ¶ 37.*

39.    On May 6, Ewells was seen by Defendant Bland for his March 25 complaint of swollen hands and ankles. Ewells no longer had swollen hands and ankles, but told Bland he would like to "discuss some other stuff." Bland declined to see him for any complaint other than the swollen hands and ankles and "encouraged [Ewells] to place a sick call for his [other] health needs." *Doc. 77-1 at 47.*

40.    On May 10, Ewells was seen by Defendant Bland for his "severe back and [left] elbow pain." Bland declined Ewells self-diagnosed need for x-rays of his

back and elbow. Instead, she told Ewells to continue with his current prescriptions. *Doc. 77-1 at 48*. The parties agree that this appointment was the last time Ewells claims he received inadequate medical care related to this lawsuit.[11] *Doc. 82 at 2–3, ¶ 7.*

41.    Chris Horton, M.D., a Regional Medical Director employed by WellPath, LLC, reviewed Ewells' medical records from September 19, 2017 (the date Ewells was "jumped" by inmates in the Cummins unit) to October 2, 2019 (the date Ewells initiated this § 1983 action). In a sworn affidavit, he opined that: (1) the medical care provided to Ewells for his September 2017 injuries was medically appropriate; (2) Ewells' March 31, 2019 "EKG did not show any urgent or emergent medical needs," and (3) "Ewells had appropriate access to healthcare and…he was provided with appropriate care and treatment for his complaints" during all relevant times. *Doc. 77-3 at 3–4, 6.*

### III. Discussion

### A.    Deliberate Indifference Claims Against Nurse Hargrave and APRN Bland

In his pleadings, Ewells brings inadequate medical care claims for two distinct periods of time: (1) September 19 to October 23, 2017, when Nurse Hargrave and

---

[11] In his summary judgment response papers, Ewells claims there is a continuing pattern of medical misconduct and attaches several medical records and grievances not related to this § 1983 action. *See Doc. 81 at 45–85; Doc. Doc. 82 at 2–3, ¶¶ 4, 7, 9–10.*

APRN Bland allegedly provided him with inadequate medical care; and (2) from January to May 2019, when APRN Bland allegedly provided him with inadequate medical care.

Defendants Hargrave and Bland argue that they are entitled to summary judgment because Ewells has failed to show, during either period of time, that they were deliberately indifferent to Ewells' serious medical needs. The Court agrees.

For the reasons explained below, Defendants' Motion for Summary Judgment (*Doc. 76*) should be granted.[12]

### 1. Ewell's Traumatic Injuries From the September 19, 2017 Altercation

To prevail on his 2017 claims of deliberate indifference against Defendants Hargrave and Bland, Ewells must prove that: (1) he had an objectively serious need for medical care for his September 2017 injuries; and (2) Hargrave and Bland subjectively knew of, but deliberately disregarded, those serious medical needs. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016). A medical need is objectively serious if it has been "diagnosed by a physician as requiring treatment" or if it is "so obvious that even a

---

[12]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson*, 477 U.S. at 249–50. The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*).

layperson would easily recognize the necessity for a doctor's attention." *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018).

Viewing the facts in the light most favorable to Ewells, at least some of his injuries following the September 2017 altercation were objectively serious. He had a large, visible abrasion on his left shin, right elbow swelling, and bruising and swelling on right hand. During the same time period he was receiving treatment for those injuries, he developed boils and blood in his stool, which also required treatment.

Even so, Ewells' deliberate indifference claims against Hargraves and Bland fail because nothing in the medical record or Ewells' deposition testimony indicates that Defendants' actions in treating those injuries and conditions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014).

Hargraves: (1) scheduled x-rays for Ewells' swollen right elbow and hand; (2) refilled his naproxen prescription; (3) cleaned his left shin abrasion and provided him triple antibiotic ointment and bandages; (4) obtained an antibiotic prescription for his boils; and (5) referred him to a provider for the blood in his stool.[13] Bland:

---

[13] Some of these actions were taken at the direction of Bland, after Hargraves placed phone calls or sent emails to her. *See e.g.*, Doc. 77-1 at 5 ("ordered xrays per Mrs. Bland"), *Doc. 77-1 at 10* ("[Voice Order] per Mrs. Bland, APN Bactrim DS x 10 days").

(1) reviewed Ewell's right elbow and hand x-rays, which show no fractures; and (2) scheduled him an x-ray for his nose.

Nurse Hargrave and APRN Bland were not required to provide Ewells with the medical treatment he believed he should receive, *i.e.*, wrap his left leg and provide pain medication stronger than naproxen. Rather, Hargrave and Bland were allowed to rely upon their own medical judgment to provide the treatment they deemed appropriate based on their knowledge of Ewells' conditions. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (a showing of deliberate indifference requires more than a mere disagreement with treatment decisions).

Further, Defendants has produced the sworn declaration of Dr. Horan who opined that the medical care provided was adequate. Ewells' lay opinion that his left shin wound "should have been wrapped" is not enough to create a factual dispute regarding the appropriateness of the treatment provided, or whether Defendants knew of, but deliberately disregarded Ewells' serious medical needs.[14]

---

[14] Although the Court may not weigh the evidence or make credibility determinations at the summary judgment stage, the "mere existence of a scintilla of evidence in support of plaintiff's position" is not enough to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Scott v. Harris*, 550 U.S. 372, 380–81 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

2. *Ewells' Treatment From January to May 2019 For His Chronic Conditions*

Ewells has several chronic medical conditions, which include hypertension, asthma, and back pain. Ewells experienced several delays in early 2019 in receiving treatment from Bland and he went approximately two months without his prescribed blood pressure medication. Deliberate indifference to a serious medical need can include the *intentional* interference with a prescribed treatment. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

The medical records make it clear that, from Bland's perspective, the delay in Ewells receiving medical treatment in early 2019 was caused by his refusal to be seen by Bland. Accordingly, any delay in Ewells receiving medical care from Bland or not receiving his prescribed medication on time were matters that were beyond her control and in no way intentional.[15]

If Ewells *was* refusing treatment, Bland was not acting with deliberate indifference by failing to refill his prescriptions. *See Logan v. Clarke*, 119 F.3d 647, 650 (8th Cir. 1997) ("The doctors' efforts, which were impeded by [prisoner's] apparent inability or refusal to follow their instructions, cannot be said to have been deliberately indifferent."); *Cherry v. Berge*, 98 F. App'x 513, 515 (7th Cir. 2004)

---

[15] Defendants attached four Treatment Refusal Forms to their summary judgment papers and highlighted the fact that Ewells refused treatment throughout their Statement of Undisputed Facts. Bland also relies on Dr. Horan's medical opinion that all treatment provided was appropriate. *Doc. 78 at 10*.

(prison officials were not deliberately indifferent by withholding prescribed medication where prisoner refused to follow protocol during pill call). However, the parties hotly dispute whether Ewells refused medical treatment from Bland during the relevant time period.

Ewells adamantly denies declining medical care from Bland. Instead, he claims that Bland was refusing to see him and falsifying Treatment Refusal Forms.

March 15, 2019 was the first time Ewells was scheduled to see Bland following his March 8 request for a renewal of his blood pressure medication. In his deposition, he described this encounter with Bland. According to Ewells, two officers escorted him to provider call and, on the way over, he told the guards that he and Bland had a "conflict of interest" because he had sued Bland in the past. According to Ewells, Bland learned about this conversation when he arrived in her office, and she told the officers "oh, well, take him back. I don't need to see him." Ewells continued to ask for treatment from Bland, but she refused. *Doc. 77-2 at 80–83*.

According to Bland's medical record from the March 15 encounter, *Ewells* stated to Bland: "I don't know what is wrong with you. You keep trying to see me. Me seeing you is a conflict of interest. I am not going to be seeing you." *Doc. 77-1 at 32*.

Likewise, Ewells' handwritten grievances and "Inmate Request Forms" tell conflicting stories about his alleged refusal to be seen by Bland.

On January 8, 2019, Ewells wrote:

I have grieved/complained about the fact that it is a conflict of interest for [Bland] to even review my medical file, let alone have any authority over my treatment…As a patient, it is my right to refuse her access to my medical file and I do so refuse her.

*Doc. 81 at 41.*

On February 6, 2019, he wrote:

[The] Administrator…violated my rights and put my health at risk by allowing Ms. Bland to have access to my medical records…I need medical help and am being left at the mercy of someone I clearly have a problem with.

*Doc. 58-4 at 23.*

On February 8, after Ewells was informed he "[did] not have the privilege of choosing a provider," he wrote:

It isn't choosing a provider to refuse [Bland] access to my records. I believe she is a threat to my health.

*Doc. 58-4 at 23.*

On February 18, 2019, he wrote:

I have put several sick-call request[s] in for the same problems and each time they are scheduling me to see Ms. Bland; and each time I have not been treated…I stated that I am refusing Ms. Bland access to my medical records, but to no avail, I was appointed to see her 3 weeks later.

*Doc. 81 at 42.*

On March 30, 2019, he wrote:

> I haven't had medication for blood pressure, pain or acid reflux in 2 months and no one is doing [anything] about it...I have been refused health care by Ms. Bland; and when she says I refused, it's being left at that.

*Doc. 81 at 27.*

On April 11, 2019, after he had been seen by Bland, and his prescriptions renewed, he wrote:

> I go to sick call, get no help, but referred and charged. Then I'm refused by the provider (which is yet to be seen).

*Doc. 58-4 at 26–27.*

On April 17, 2019, he wrote:

> Security camera and logs will prove I was escorted to see Ms. Bland...due to the inability to walk that far...I'm told if I don't see her, I won't be helped. I had to practically beg her to reinstate meds that are life threatening...the fact that she knowingly falsified my refusal proves that Ms. Bland deliberately held my meds for 2 months, putting my health at risk.

*Doc. 58-4 at 31–32.*

Viewing these convoluted and inconsistent statements *in the light most favorable to Ewells*, as I am required to do at the summary judgment stage, it appears Ewells refused to see Bland starting in January but began seeking treatment from her in mid-March, after his blood pressure medication had run out. At that point, Bland contemporaneously completed numerous Treatment Refusal Forms, which were all signed by a witness, documenting Ewells' refusal to see her. While Ewells seeks to dismiss those documents as "fabrications," it is worth noting all those documents

22

were "witnessed" by a third-party. Giving Ewells the benefit of the doubt, it appears that on March 15 and March 29, Bland may have refused to see Ewells for his complaints of upper back and elbow pain; headaches; left eye lump; and hypertension. If so, this resulted in a three-week delay because, on April 5, she saw Ewells for these problems and refilled his prescriptions.

Because Ewells' only possible 2019 inadequate medical care claim against Bland is based on a *short delay* in medical treatment, the burden is on him to establish that the three-week delay in treatment was detrimental to him. *Jackson v. Riebold*, 815 F.3d 1114, 1119–20 (8th Cir. 2016). The Eighth Circuit has held that a plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Id.* Where an inmate fails to offer such evidence, "[he] fail[s] to raise a genuine issue of fact on an essential element of his claim." *Id. at 1120*.

The record shows only that: (1) on March 26, Ewells' back "went out" causing him to fall to the floor; and (2) on March 31, Ewells presented to sick call with chest pains. Ewells has placed no "verifying medical evidence in the record" to show that these two incidents were caused by Bland's delay in providing medical care or that there was any "detrimental effect" from the delay. Accordingly, Ewells has failed to raise a genuine issue of fact, and Bland is entitled to summary judgment on Ewells' 2019 claims.

Because Ewells has presented no evidence that Defendants Bland and Hargraves were deliberately indifferent to his September 2017 injuries or chronic health conditions in 2019, Bland and Hargraves are entitled to summary judgment, as a matter of law.

### B.     Ewells' Corrective Inaction Claims Against Defendants Parker, Powell, and Witherspoon

It is undisputed that Parker, Powell, and Witherspoon did not provide medical care to Ewells during the relevant time period. *Doc. 82 at 3, ¶ 8*. Instead, Ewells brings a claim against Parker based on her failure to take action after learning about Bland's alleged refusal to see him. *Doc. 82 at 12, ¶ 40*. He likewise claims that Powell knew about Bland's actions but failed to "rectify the situation." *Doc. 82 at 12, ¶ 39*. Finally, he claims that Witherspoon knowingly "put [him] in the line of danger" by continuing to schedule him to be seen by Bland, and that she should have scheduled him to been seen by a specialist instead. *Doc. 82 at 12, ¶ 38*.

Ewells' allegations against Parker, Powell, and Witherspoon at most are "corrective inaction" claims based on the theory that Parker, Powell, and Witherspoon knew Ewells was not receiving constitutionally adequate medical care, but failed to take affirmative actions to correct it.

Supervisors may be held liable in a § 1983 action when their failure to take corrective action amounts to deliberate indifference to, or tacit authorization of,

constitutional violations. *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993).[16]

However, because "there were no constitutional violations to correct," Parker, Powell, and Witherspoon may not be held liable under a theory of "corrective inaction." *Id.* Accordingly, Ewells' corrective inaction claims against Parker, Powell, and Witherspoon should be dismissed.

## C.    Ewells' New Claims Raised In His Response to Defendants' Motion for Summary Judgment

In his Response to Defendants' Summary Judgment, Ewells alleges, for the first time, that: (1) he "was denied a psychological examination" upon intake at the Varner Unit on September 19, 2019 (*Doc. 80 at 1*); (2) Defendants were "running the medical department in a way to cut costs," (*Doc. 80 at 4*); and (3) Defendants' actions constituted "a pattern of misconduct" (*Doc. 82 at 2–3, ¶¶ 4, 7, 9–10*).

Ewells chose to raise these claims for the first time in his Response to Defendants' Motion for Summary Judgment, which was long *after* the close of discovery, and the deadline for filing dispositive motions. Thus, for a host of procedural and substantive reasons, including the undue delay and prejudice to the Defendants that would result, the Court should dismiss those claims, without prejudice. *See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d

---

[16] Although Parker, in her position as Health Services Administrator at Varner, was most likely a "supervisor" of Hargrave and Bland, there is no indication from the record that Powell or Witherspoon had supervisory authority.

1052, 1065 (8th Cir. 2005) (holding that a district court may appropriately deny permission for leave to amend when there is "undue delay" or "prejudice to the nonmoving party").[17]

## IV.  Conclusion

The undisputed facts establish that Defendants Hargrave and Bland did not act with deliberate indifference to Ewells' serious medical needs. Similarly, because Hargrave and Bland provided Ewells with constitutionally adequate medical care, his corrective inaction claims against Defendants Parker, Powell, and Witherspoon also fail, as a matter of law.

IT IS THEREFORE RECOMMENDED THAT: Defendants' Motion for Summary Judgment (*Doc. 76*) be GRANTED; all of Ewells' claims against Defendants, be DISMISSED, with prejudice; and this case be dismissed and judgment be entered in favor of Defendants.

DATED this 18th day of February, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

[17] Ewells' claims of "a pattern of misconduct" and a "cut costs" policy also fail because there can be no liability on those theories absent an underlying constitutional violation by Defendants. *See Smith v. Kilgore*, 926 F.3d 479, 486 (8th Cir. 2019); *Schoettle v. Jefferson County*, 788 F.3d 855, 861–62 (8th Cir. 2015).